UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENAE HARDING RISAK,                              Case No. 12-10185

            Plaintiff,                          Paul D. Borman
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On January 16, 2012, plaintiff Renae Harding Risak filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Paul D. Borman referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claim for a closed period of disability and disability insurance benefits.  (Dkt. 3).

This matter is before the Court on cross-motions for summary judgment.  (Dkt. 9,

12).

## B.     Administrative Proceedings

Plaintiff filed the instant claims on December 10, 2007, alleging that she was disabled since April 10, 2006.  (Dkt 6-5, Pg ID 178-185).  The claim was initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on April 30, 2008.  (Dkt. 6-3, Pg ID 108).  Plaintiff requested a hearing and on April 8, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Michael F. Wilenkin, who considered the case *de novo*. (Dkt 6-2, Pg ID 67-95).  At that time, plaintiff moved to amend her application to request a closed period of disability from April 10, 2006 to September 1, 2009.  (Dkt. 6-2, Pg ID 69-70).  In a decision dated August 23, 2010, the ALJ found that plaintiff was not disabled during the claimed closed period of disability.  (Dkt. 6-2, Pg ID 36-47).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits[1] (Dkt. 6-2, Pg ID 28-29), the Appeals

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Council, on November 17, 2011, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 25-30); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ's Findings

At the time of the administrative hearing, plaintiff was 39 years old and worked full-time as a cashier and cook.  (Dkt. 6-2, Pg ID 70, 73-74).  Plaintiff has an associates degree in accounting and degrees to be a medical claims billing specialist and an EKG specialist.  (Kt. 6-2, Pg ID 72-73).  Plaintiff's relevant work history included work as a bookkeeper, cook, waitress, office manager, postal worker and manufacturer.  (Dkt. 6-2, Pg ID 195).  In denying plaintiff's claims, defendant Commissioner considered coronary artery spasms, anxiety, stress and diffuse left side pain and paresthesia as possible bases of disability.  (Dkt. 6-2, Pg ID 41-42; Dkt. 6-6, Pg ID 194).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since

April 10, 2006. (Dkt. 6-2, Pg ID 41). At step two, the ALJ found that plaintiff's coronary artery spasm due to smoking tobacco abuse, anxiety and stress and diffuse left side pain and paresthesia were "severe" within the meaning of the second sequential step. (Dkt. 6-2, Pg ID 41-42). The ALJ found that plaintiff's medically determinable mental impairments of anxiety/adjustment disorder were nonsevere. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 6-2, pg ID 43). At step four, the ALJ found that plaintiff could perform her past relevant work as a bookkeeper and thus denied benefits. (Dkt. 6-2, Pg ID 46). The ALJ further found, in the alternative, that plaintiff is denied benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 6-2, Pg ID 46-47).

### B.     Plaintiff's Claim of Error

Plaintiff claims that the ALJ improperly found that she could return to her past relevant work by relying on flawed vocational expert testimony. Plaintiff first argues that the VE testimony is flawed because it addressed the wrong time period. Specifically, plaintiff argues that the VE was only asked to testify as to plaintiff's ability to work as of the date of the hearing. However, plaintiff was already back to work at that time and was instead seeking a closed period of disability from April 10, 2006 to September 1, 2009. Plaintiff claims that the

4

VE's testimony did not address that time period.

Second, plaintiff contends that the hypothetical posed to the VE did not accurately portray her limitations. The ALJ first asked the VE:

> Take the claimant as she presents this morning a younger individual at all times pertinent to our inquiry possess[ing] . . . the past educational background [and the] past relevant work experience described in the record[.] [A]ssume if you would that her descriptions is [sic] accurate an accurate reflection of how well she was able to function on a sustained basis during the course of the subject period of inquiry. All that being the case, would she during that period have been able to perform her past or any other work?

(Dkt. 6-2, pg ID 90). The VE responded "No, Your Honor." *Id.* The ALJ then posed the following second hypothetical to the VE:

> Assume the existence of a hypothetical person; one who is vocationally situated as is the claimant in terms of age, education and past relevant work with respect to such a person, assume that during the subject time in question, the individual is capable of sitting six of eight hours of an eight hour work day, standing or walking two of eight hours of a eight hour work day; is capable of lifting as much as 10 pounds occasionally and lesser with somewhat more frequently [sic]; may assume a history of what appears to be cardiac dysfunction in the form of almost refractory recurring episodes, I should say recurrent refractory episodes of coronary artery vasial spasm; does not appear to be any significant indication of Coronary Artery Disease but there does therefore appear to be a history of recurrent problems with chest discomfort. You may assume a history of complaint of neurological phenomenon affecting the left . . . affecting the left and non-dominant side of the hypothetical

5

individual's body particularly the left upper extremity
from below the shoulder and the chest and the fingers, all
the digits of the left hand and from the hip to all the
digits of the left foot. You may assume that there
appears to have been an ongoing history that continues
to the present time of sensory neurological disturbance in
the form of ongoing numbness and tingling parethesia
[sic]. There is no indication in this record of any specific
neurological deficit would account for these symptoms
and that's the case not withstanding an extraordinary
battery of rather sophisticated neurological tests and
investigations. Records suggest the presence of some
emotional difficulties[,] an element of Depression and
Anxiety. There is no evidence in this record of any
ongoing significant compromise of cognitive and
intellectual function. So too, the record does not reveal
any significant deficit with respect to [the] hypothetical
individual's ability to tolerate contact with the public,
co-workers and supervisory personnel. Lastly, you may
assume the deficit suffered nor the modalities employed
to treat the same during the said period, do not appear to
warrant a need for mandatory daily recumbancy. All of
these deficits obtaining, would such an individual be
able to perform any of the work performed by the
claimant in the relevant past and if not would any other
work be appropriate to these limitations?

(Dkt. 6-2, Pg ID 90-92). The VE responded:

Well, it would certainly appear to me, Your Honor that
just on the basis of your description of her difficulties
and the limitations in the hypothetical that her work as a
Bookkeeper when she performed it at a sedentary level
would be consistent with Your Honor's hypothetical. In
addition to that on the basis of her educational
background, other occupations such as Insurance Claims,
Processors, Billing Clerks, Receptionist, Interview
Clerks[. A]ll of those could be considered Your Honor
and they're well over 50,000 of those at a sedentary level

in the State and one/half in the southeastern area.

(Dkt. 6-2, Pg ID 92).

Plaintiff argues that this second hypothetical is flawed because it was not based on the record as a whole or the plaintiff's testimony as to her limitations. According to plaintiff, she could not work during the closed disability period because "the medications she was taking made her disoriented, her spasms continued and she was unable to even do regular activities." (Dkt. 9, p. 9). Plaintiff therefore asks that the Court reverse the Commissioner's decision and award benefits to her, or that this case be remanded to the Commissioner for further proceedings.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner urges the Court to reject plaintiff's sole argument and find that the ALJ's hypothetical accurately portrayed plaintiff's credible limitations.

The Commissioner states that plaintiff reported pain and discomfort in her chest in May and June 2005, but an extensive cardiac work up revealed no electrocardiographic evidence of exercise inducible myocardial ischemia, mild wall motion and wall thickening abnormalities, and no evidence of significant valvular abnormalities. (Dkt. 6-8, Pg ID 316, 318-20, 322). Cardiac catheterization revealed normal results with only mild and minor problems with

blood flow.  (Dkt 6-8, Pg ID 302-03). Dr. Farouk Salahi, M.D., plaintiff's treating

cardiologist, diagnosed plaintiff with coronary artery spasm and/or Wise syndrome

and recommended that she should use Nitrostat without hesitation for any chest

pain or angina.  (Dkt. 6-8, Pg ID 331).

Plaintiff did not seek treatment for her cardiac problems again until July

2007.  (Dkt. 6-8, Pg ID 329).  Dr. Salahi noted that plaintiff missed her follow-up

appointments because of her insurance status, that she continues to smoke, and

that she reports having symptoms of chest pain and angina almost daily.  *Id.*  Dr.

Salahi noted a normal physical exam and normal EKG test, and advised plaintiff to

discontinue smoking completely, cut down on her medications (Sular and

Clonipin) to every other day, and come back for reevaluation after two to three

weeks.  *Id.*  In August 2007, plaintiff reported to Dr. Salahi that she is feeling

much better on Nitrostat and has had no more symptoms of palpitation.  (Dkt. 6-8,

Pg ID 328).  Dr. Salahi again noted a normal physical exam and advised plaintiff

to continue on Nitrostat as needed, discontinue Sular, and come back for

reevaluation in one month.  *Id.*  Dr. Salahi saw plaintiff in September 2007, again

noted a normal physical exam, and advised plaintiff to come back for reevaluation

after four months.  (Dkt. 6-8, Pg ID 327).

Plaintiff returned to Dr. Salahi in October 2007, complaining of feeling

tired.  (Dkt. 6-8, Pg ID 326).  Physical examination was again unremarkable,

although Dr. Salahi noted that plaintiff was emotional. *Id.* Dr. Salahi advised plaintiff to stop smoking completely, prescribed Xanax, and advised plaintiff to come back for reevaluation in one month. *Id.* In November 2007, Dr. Salahi reported to plaintiff's treating primary care physician, Sheryl Wissman, M.D., that "the only cardiac diagnosis I can make out of her is coronary artery spasm that is related to nicotine abuse, and anxiety and stress." (Dkt. 6-8, Pg ID 325).

Dr. Salahi continued to treat plaintiff for her complaints of chest pain and palpitations and noted that she is emotional and that the physical examination is generally unremarkable. (Dkt. 6-9, Pg ID 378-79, 385, 389-91). Plaintiff was advised to continue her medication and quit smoking. *Id.*

Plaintiff also received a gastroscopy in October 2007, which revealed a distal esophageal ulcer with esophageal spasm. (Dkt. 6-8, Pg ID 333-34; Dkt. 6-9, Pg ID 392-94). Dr. Samir Al-Hadidi advised plaintiff to double her proton pump inhibitors, take a GI cocktail on an as needed basis and to add Librax at bedtime. *Id.*

Cesar Hidalgo, M.D., examined plaintiff several times and conducted a number of tests between April and July 2006 to address plaintiff's complaints of left-sided numbness. (Dkt. 6-7, Pg ID 238-57). Dr. Hidalgo did not find any significant neurologic abnormalities and opined, given the extensive neurologic studies conducted, that plaintiff follow a course of neurologic surveillance with no

need for a follow-up unless she has new symptoms. *Id.*

In November 2006, Dr. Robert Lisak, neurologist, evaluated plaintiff to determine whether she had multiple sclerosis. (Dkt. 6-7, Pg ID 285-88). Plaintiff was complaining of left sided pain and sensory symptoms, chest pain one to two times a week, and fatigue. *Id.* Dr. Lisak also noted a past history of anxiety and panic attacks, and that the neurologic examination shows a normal mental status exam. *Id.* Dr. Lisak reported that plaintiff had sensory deficits on her left side, but stated that the findings did not represent multiple sclerosis. *Id.*

Plaintiff was also evaluated by a consultative psychiatrist, Dr. Wladimir Zarski, in September 2006. (Dkt. 6-7, Pg ID 259-61). Dr. Zarski noted on examination that plaintiff demonstrated good orientation, memory, judgment and the ability to make calculations and recognize similarities and differences. *Id.* Dr. Zarski further noted that plaintiff had not had any prior psychiatric treatment or hospitalizations, and assigned plaintiff a Global Assessment of Functioning ("GAF") score of 65, indicating only mild symptoms. *Id.*; Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32-34 (4th ed. Text Rev. 2000). Dr. Linda Brundage, a limited licensed psychologist, reviewed Dr. Zarski's report and opined that plaintiff had only mild mental functional limitations. (Dkt. 6-7, Pg ID 263-276).

The Commissioner argues that the ALJ's second hypothetical question

10

accurately portrayed all of plaintiff's credible limitations, and that plaintiff has
failed to identify any medical records supporting her claim that her symptoms
were disabling during the relevant period under consideration. Specifically, the
medical records do not reflect that plaintiff needed to be recumbent daily or that
her medications would preclude her ability to work. The ALJ further argued that
the state agency physician, Russell E. Holmes, M.D., reviewed plaintiff's medical
record and opined that plaintiff's limitations were not disabling. (Dkt 6-8, Pg ID
353-60). Dr. Holmes opined that plaintiff could lift 20 pounds occasionally and
ten pounds frequently, and sit for about six hours and stand/walk for about six
hours in an eight-hour workday. *Id.* The Commissioner noted that although Dr.
Holmes' opinion was consistent with the medical findings, the ALJ credited
plaintiff's subjective complaints, in part, and found that plaintiff's limitations were
more restrictive than Dr. Holmes' opinion. (Dkt. 6-2, Pg ID 45).

The Commissioner further noted that the ALJ's second hypothetical
question was also supported by the absence of non-exertional limitations in the
reports of Drs. Zarski and Brundage. Finally, the Commissioner argued that the
ALJ properly assessed plaintiff's credibility and found that plaintiff exaggerated
her symptoms, especially her claim that she needed to be recumbent daily, and that
her testimony was unsupported by the medical record. Thus, the Commissioner
concludes, the ALJ's second hypothetical question included all of plaintiff's

substantiated complaints and the ALJ therefore properly relied on the VE's testimony in response to that question.

## III.   ANALYSIS

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

14

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by

15

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

   If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

First, plaintiff's claim that the VE's testimony is flawed because it did not address the closed disability period is simply wrong. The ALJ clearly asked the VE to assume, in both hypothetical questions, plaintiff's symptoms "during the course of the subject period of inquiry" and "during the subject time in question." (Dkt. 6-2, Pg ID 90, 91). Both hypothetical questions therefore appropriately addressed the closed period of disability.

The crux of plaintiff's argument is that the ALJ failed to fully credit her testimony that, during the relevant time period, she needed to lie down during the day and was unable to even do regular activities as a result of her coronary artery spasms and anxiety. Plaintiff argues that the ALJ's second hypothetical question to the VE "was based on in put [sic] from the ALJ, not based on the record as a whole nor her testimony, but rather based on his own assumptions." (Dkt. 9, p.9). Plaintiff claims that the ALJ's first hypothetical question posed to the VE–asking the VE to assume that "[plaintiff's] description[] . . . [is] an accurate reflection of how well she was able to function on a sustained basis during the course of the subject period of inquiry"–more accurately reflects her limitations during the relevant time period. *Id*. The undersigned finds plaintiff's claims to be without merit.

18

The undersigned has thoroughly reviewed the record evidence, the parties'

submissions, and the ALJ's decision, and finds that the VE's testimony in

response to the second hypothetical question accurately reflects plaintiff's

impairments and provides substantial evidence supporting the ALJ's decision. An

ALJ is entitled to rely upon the testimony of a vocational expert in response to

hypothetical questions where the questions accurately portray the claimant's

physical and mental impairments. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 548 (6th Cir. 2004). In creating a hypothetical for a vocational expert, the

ALJ is obligated to "translate the [plaintiff's deficiencies] into a set of specific

limitations that are properly rooted in the administrative record." *Bohn-Morton v.*

*Comm'r of Soc. Sec.*, 389 F. Supp.2d 804, 807 (E.D. Mich. 2005); *see also Smith*

*v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (a hypothetical must "accurately [set]

forth the plaintiff's physical and mental impairments."). "The rule that a

hypothetical question must incorporate all of the claimant's physical and mental

limitations does not divest the ALJ of his or her obligation to assess credibility and

determine the facts. In fashioning the hypothetical question to be posed to the

vocational expert, the ALJ 'is required to incorporate only those limitations

accepted as credible by the finder of fact.'" *Bartyzel v. Comm'r of Soc. Sec.*, 74

Fed. Appx. 515, 524 (6th Cir. 2003) (citing *Casey v. Sec'y of Health & Human*

*Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *see also Gant v. Comm'r of Soc.*

19

*Sec.*, 372 Fed. Appx. 582, 585 (6th Cir. 2010); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (the ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical).

Contrary to plaintiff's contention that the ALJ's first hypothetical question "was based on [plaintiff's] testimony and the record as a whole" (Dkt. 9, p. 9), that question was clearly based solely on plaintiff's testimony, i.e., "[plaintiff's] description" as to her ability to function during the relevant time period.[2]  The ALJ then asked the VE to consider, in the second detailed hypothetical question:

> Assume the existence of a hypothetical person; one who is vocationally situated as is the claimant in terms of age, education and past relevant work with respect to such a person, assume that during the subject time in question, the individual is capable of sitting six of eight hours of an eight hour work day, standing or walking two of eight hours of a eight hour work day; is capable of lifting as much as 10 pounds occasionally and lesser with somewhat more frequently [sic]; may assume a history of what appears to be cardiac dysfunction in the form of

---

[2]Plaintiff fails to identify any medical records in support of her contention that her symptoms were disabling during the relevant time period.   Plaintiff cannot simply make the claim that the ALJ erred in assessing her credibility and therefore, was not entitled to rely on the VE's testimony, while leaving it to the Court to scour the record to support this claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831, at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citations omitted).

almost refractory recurring episodes, I should say recurrent refractory episodes of coronary artery vasial spasm; does not appear to be any significant indication of Coronary Artery Disease but there does therefore appear to be a history of recurrent problems with chest discomfort.  You may assume a history of complaint of neurological phenomenon affecting the left . . . affecting the left and non-dominant side of the hypothetical individual's body particularly the left upper extremity from below the shoulder and the chest and the fingers, all the digits of the left hand and from the hip to all the digits of the left foot.  You may assume that there appears to have been an ongoing history that continues to the present time of sensory neurological disturbance in the form of ongoing numbness and tingling parethesia. There is no indication in this record of any specific neurological deficit would account for these symptoms and that's the case not withstanding an extraordinary battery of rather sophisticated neurological tests and investigations.  Records suggest the presence of some emotional difficulties[,] an element of Depression and Anxiety.  There is no evidence in this record of any ongoing significant compromise of cognitive and intellectual function.

So too, the record does not reveal any significant deficit with respect to [the] hypothetical individual's ability to tolerate contact with the public, co-workers and supervisory personnel.  Lastly, you may assume the deficit suffered nor the modalities employed to treat the same during the said period, do not appear to warrant a need for mandatory daily recumbancy.  All of these deficits obtaining, would such an individual be able to perform any of the work performed by the claimant in the relevant past and if not would any other work be appropriate to these limitations?

(Dkt. 6-2, Pg ID 90-92).

Plaintiff baldly asserts that this hypothetical "was based on in put [sic] from the ALJ, not based on the record as a whole nor her testimony, but rather based on his own assumptions," but fails to offer *any* further analysis as to why that is so or which parts of this second hypothetical are claimed to be inaccurate. (Dkt. 9, p. 9). As the Commissioner correctly argues, the ALJ's second hypothetical question accurately portrayed all of plaintiff's credible limitations during the relevant time period. The record reflects that plaintiff first reported pain and discomfort in her chest in May and June 2005, but that an extensive cardiac evaluation revealed only mild and minor problems. (Dkt. 6-8, Pg ID 302-03, 316, 318-20, 322). Plaintiff was diagnosed with coronary artery spasm related to nicotine abuse and/or Wise syndrome. (Dkt. 6-8, Pg ID 325, 331). Plaintiff reported that her symptoms of chest pain and angina were relieved with medication. Plaintiff received a complete and extensive neurological work up that did not reveal any significant neurologic abnormalities. (Dkt. 6-7, Pg ID 238-57, 285-88). Further, Drs. Zarski and Brundage found that plaintiff's alleged mental impairment was non-severe because plaintiff did not have any formal mental health treatment and Dr. Zarski assigned plaintiff a GAF of 65, indicating only mild symptoms. (Dkt. 6-7, Pg ID 259-61, 263-76). These records did not reflect that plaintiff needed to be recumbent daily or that her medication would preclude her from work.

In addition, although the state agency medical consultant opined that

plaintiff was capable of performing light exertional work (Dkt. 6-8, Pg ID 353-60), and the ALJ noted that the opinion was consistent with the record, the ALJ nevertheless reasonably accommodated plaintiff's partially credited claims as to her limitations by limiting her to sedentary work, which is a very restricted RFC. See SSR 96-9p ("Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by the medical impairments have very serious functional limitations.").

That the second hypothetical question does not include plaintiff's subjective testimony of her need to be recumbent during the workday is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The ALJ found plaintiff's allegations regarding her limitations during the relevant time period to lack credibility. Although plaintiff complained that her physical and emotional conditions were so severe as to prevent her from doing any regular activities, the ALJ noted that the plaintiff's claims were not supported by the record or medically required. (Dkt. 6-2, Pg ID 45). There is no documented specific requirement in the medical records that plaintiff needs to lie down during the day either

periodically or extensively as she claims.  Plaintiff fails to identify any record

evidence imposing this limitation, but instead relies solely on her own testimony

as to her claimed limitations.  Indeed, plaintiff falls well short of proffering

sufficient evidence to disturb the ALJ's credibility determinations, which are

entitled to considerable deference.  *See Cruze v. Comm'r of Soc. Sec.*, 502 F.3d

532, 542 (6th Cir. 2007) ("an ALJ's credibility determinations about the claimant

are to be given great weight").

Therefore, because a review of the ALJ's decision and the administrative

record reveals that the ALJ's decision is well-supported by substantial evidence,

plaintiff's claim of error should be rejected and the Commissioner's decision

affirmed.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 15, 2013                      s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 15, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Richard J. Doud, Theresa M. Urbanic, AUSA, and the Commissioner of Social Security</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

26